Ex Parte Craig.

*Ex parte* CRAIG.

In Banc, November 19, 1895.

.1. **Jurisdiction**: HABEAS CORPUS. One imprisoned for the violation of an order or judgment in excess of the jurisdiction of the court rendering it can be discharged on *habeas corpus*.

2. **Prohibition**: CONTESTED ELECTION: SUSPENSION OF JUDGMENT: REHEARING. Where the supreme court has denied a writ of prohibition to restrain the circuit judge from enforcing a judgment of ouster in a contested election case pending an appeal from said judgment, neither leave to file a motion for rehearing and intention to file it, nor the actual filing of the motion, will suspend the force of the judgment of the supreme court, in the absence of an order specially providing therefor.

3. **Contested Election**: JUDGMENT OF OUSTER: BOND. The refusal of the county court to approve the bond of one whom the circuit court in an election contest case, adjudged entitled to the office, will not excuse the incumbent from refusing to surrender possession of the office in obedience to the judgment of ouster.

4. **Practice**: NEW TRIAL: EXECUTION. The mere filing of a motion for new trial will not operate *per se* to stay the issuance of an execution.

*Habeas Corpus.*

WRIT DENIED.

GANTT, J.—On the twenty-third day of May, 1895, and pending the April term of this court, Enos Craig presented his petition to the judges of this court for a writ of *habeas corpus* directed to the sheriff of Buchanan county, who was charged to be illegally depriving said petitioner of his liberty.

It appeared that at the general election in 1894 said Enos Craig and Robert M. Nash were candidates for the office of county clerk of Buchanan county; that said Craig received the certificate of election and in due

time his commission from the governor and took possession of the office; that Nash, in due time and form, contested said election of said Craig and upon proceedings had in the circuit court of Buchanan county a judgment was rendered on the nineteenth of February, 1895, awarding the office to said Nash, and adjudging he was duly elected county clerk of said county and directing said Craig to turn over the office to said Nash.

Craig thereupon filed his motion for new trial and in arrest of judgment which were overruled on March 2, 1895, and Craig thereupon filed his affidavit for appeal which was allowed and also entered into an appeal bond, with the condition and undertaking "that said Craig should prosecute his appeal with due diligence to a decision in this court and should pay all costs that had accrued or that might accrue in said cause."

On the day preceding the approval of this appeal bond Nash served on Craig a certified copy of said judgment of ouster and then presented to the county court a copy of said judgment and a bond and requested the approval thereof. The county court deferred acting on the bond for two days, when Nash again requested action without effect.

On the seventh day of March, 1895, Nash took the oath of office as county clerk as required by statute and had the same recorded, and, having done so, moved the circuit court for an attachment against Craig to enforce the judgment awarding him said office. This motion was sustained and the attachment issued made returnable March 11, 1895, but prior to that date three of the judges of this court granted a rule on Judge Woodson, the judge of the circuit court of Buchanan county, and against Nash, to show cause why they should

not be prohibited from enforcing said writ of attachment against said Craig.

Upon the issues made up in this court on the proceeding for prohibition, this court denied the writ of prohibition and held that the appeal taken, and bond given, by said Craig after judgment of ouster pronounced against him did not vacate, supersede or in any manner affect the judgment and that the circuit court very properly attached him for his refusal to obey its judgment.

Upon the promulgation of the judgment of this court on the said proceeding for a prohibition, on the twenty-second day of May, 1895, said Craig was again cited before Judge Woodson to show cause why he should not be punished for contempt of court in not delivering to Nash the office of county clerk of said county, and given time to make his return to the citation. He answered "that he had duly appealed from the judgment in favor of contestant; had given bond as required by law and his appeal was yet pending, and, furthermore, that the prohibition proceeding was not yet finally determined *because time had been allowed to file a motion for rehearing and that he intended to file such a motion.*" He further returned "that Nash had not given bond as county clerk."

The circuit court adjudged that return insufficient, and that said Craig was in contempt, and thereupon ordered the sheriff of said county to eject said Craig from said office and place said Nash in possession thereof, and further ordered that said Enos Craig pay a fine of $100 and be committed to the county jail for a space of ten days and that a commitment immediately issue, and thereupon said Craig was arrested by the sheriff of Buchanan county. The petition for *habeas corpus* sought to discharge him from the imprisonment thus imposed by Judge Woodson.

I.  It is the settled law of this state that one imprisoned for the violation of an order or judgment in excess of the jurisdiction of the court rendering it can be discharged by a writ of *habeas corpus*.    Section 5378, R. S. 1889; *Ex parte Arnold*, 128 Mo. 256.

Before this court could discharge the petitioner from the imprisonment to which he had been committed by Judge Woodson it must have appeared to us that Judge Woodson had exceeded his jurisdiction either as to place, matter, sum, or person, or that said imprisonment, though originally lawful, had by some subsequent act, omission, or event, become unlawful, or that his process was void, or the process though in lawful form had been issued in a case or under circumstances not allowed by law, or that the process had been issued or executed by a person not authorized by law to issue or execute the same, or that the process is not authorized by any judgment, order, or decree, nor by any provision of law.

That his order committing petitioner was not open to either of these objections we thought was apparent, if the judgment of this court in *State ex rel. Craig v. Woodson*, 128 Mo. 497, was entitled to any respect whatever.    Prior to the order committing petitioner for contempt, this court in that case had decided that the appeal taken by petitioner and the bond given by him in the contested election case after judgment of ouster against him did not vacate, supercede, or in any manner affect the judgment of ouster.    So much of his return, then, as averred the pendency of his appeal not only constituted no excuse for his persistent refusal to submit to the lawful authority of the circuit court, but it evinced no little want of respect for this court, or the opinion of a majority of its members.

Some palliation is sought, however, in the fact that he further answered "that he had leave to file a motion

for rehearing and that he intended to do so in the ten days allowed." In other words, petitioner assumed that, notwithstanding the solemn judgment of this court was given on the twenty-second day of May, 1895, and duly announced and recorded as provided by law, as a matter of fact, that judgment was not in force and should be ignored by the circuit court until the lapse of ten days thereafter.

The circuit court did not so construe the judgment of this court but held that it removed as soon as it was promulgated all obstacles to its enforcement of its own judgment, which had been held in abeyance by our writ of prohibition.

The mere leave to file a motion for rehearing did not and could not affect the vitality and efficacy of our judgment. Not only was every presumption in favor of the correctness of our judgment given after solemn deliberation, but we thought it beyond cavil that until that judgment was set aside by this court it was conclusive upon the parties to it.

A motion for rehearing in this court in an original proceeding like this is similar in principle to a motion for a new trial in the circuit court, save that the right to move for a new trial is made absolute by statute, and the motion for rehearing is dependent upon the rules and practice of this court.

Under the statutes of this state and decisions of this court the party prevailing in the circuit court is entitled to an execution, *eo instanti*, upon the rendition of his judgment or decree. It is true that in *Stephens v. Brown*, 56 Mo. 23, it was said that it was erroneous to issue an execution before the motion for a new trial overruled, but it is evident from the report of the case that no such question was made by counsel on either side and no authority is cited and no reason given for the ruling. It was regarded at the time as a marked

innovation in the practice and was entirely ignored in the subsequent case of *Fontaine v. Hudson*, 93 Mo. 62, which gave the statute (sec. 4895, R. S. 1889), the construction that had been given it previous to the decision of *Stephens v. Brown*.

The mere filing of a motion for a new trial will not operate *per se* to stay the issuance of an execution. *People ex rel. v. Loucks*, 28 Cal. 68; *Jones v. Spears*, 56 Cal. 163; *Church v. Goodin*, 22 Kan. 527; *Eaton v. Caldwell*, 3 Minn. 134.

The practice at common law was different, because the judgment was not signed until the lapse of the four days after the rendition of the verdict, or before the term closed if before the four days expired, and if the motion was filed not until after its determination, and so rigid was the rule that if the judgment was first entered it was regarded as a denial of the motion for new trial. 2 Tidd's Practice, 903, 904; *Parr v. Van Horne*, 40 Ill. 122. But under our code the practice is different. The judgment is entered by the clerk upon the rendition of the verdict, or finding by the court, and the motion for a new trial is not affected by the entry of the judgment. But neither at common law nor under our code is the judgment suspended or impaired by the mere pendency of a motion for a new trial.

It is doubtless competent for the court, for good cause shown, to direct that process shall not issue on its judgment during the term, or pending the motion, but, unless such an order is made the mere filing of a motion for new trial, or rehearing, constitutes no impediment to the execution of the judgment or decree.

No order was made by this court suspending the force of our judgment or opinion in *State ex rel. Craig v. Woodson*, and by all the analogies of the law we felt we were justified in holding that the mere intention to file a motion for rehearing did not have the effect of

superseding our order removing the prohibition restraining Judge Woodson from exercising a jurisdiction which we had held he possessed. He could only ascertain the judgment of this court by its record, and he had no right to discredit our opinion merely because petitioner announced he proposed to move for a rehearing. Neither his expressed intention, nor subsequent filing, in any manner affected the validity of our judgment.

As to the proposition that Nash had not qualified by giving bond, that was a matter also within the jurisdiction of the circuit court. If the county court, without reason or law, arbitrarily refused to pass upon the bond Nash tendered it, we have no doubt the circuit court possessed ample jurisdiction to compel it to act; and the refusal of the county court to consider a matter so clearly enjoined upon it by law, did not mitigate the willful contempt of petitioner toward the circuit court.

For the foregoing reasons we denied the writ, but owing to the press of work were unable to state our reasons in writing at the time. MACFARLANE, SHERWOOD and BURGESS, JJ., concur; BRACE, C. J., BARCLAY and ROBINSON, JJ., dissent.

BARCLAY, J. (*dissenting*).—We respectfully dissent from the conclusion just announced.

Without discussing other features of the case, or attempting elaborate argument of our propositions, we desire to place on record two of the reasons which seem to us to present barriers to the judgment of the majority of the court.

1. As the statutes governing election contests authorize the holder of a certificate of election to retain his office "until the contest shall be decided," and permit an appeal from a circuit judgment in such cases, we consider that a duly perfected appeal (with statutory

bond) is plainly intended to produce a stay until the contest can be decided in the appellate court.    Revised Statutes, 1889, sections 4707, 4744, and 8611.  We hold that the contest is not "decided" while such an appeal is pending and undetermined.    Our reasons for that opinion are stated in *State ex rel. Craig v. Woodson*, (1895), 128 Mo. 497 (31 S. W. Rep. 104), a prohibition proceeding, growing out of the same contest.  We need not repeat them.

2.    The sufficiency of the facts on which a commitment for contempt is founded may be tested by the writ of *habeas corpus* in this state, as our statute has given that summary mode to review proceedings of that nature.    Revised Statutes, 1889, section 5378.

It appears that the petitioner, on the day his application was denied by a majority of the supreme court, was cited by the circuit court to appear at 2 P. M. to show cause why, pending his appeal in the main case, he should not be punished for contempt in failing to deliver to Mr. Nash, contestant, the office in controvery, together with all the records of that office.

The petitioner was allowed two and one half hours to make return to the citation.    He did so, stating the facts as to the condition of the prohibition proceeding, and claiming that as the supreme court had allowed him a definite time (not then expired) to file a motion for rehearing, its decision in that case was not yet a finality.

He further returned, as a reason why he should not be punished, that Mr. Nash had not qualified to take the office, as required by section 1966, Revised Statutes, 1889.

The circuit court held his return insufficient, and, after some discussion, upon petitioner's declining to voluntarily surrender possession to Mr. Nash, the court adjudged petitioner to be guilty of contempt, fined him

$100, and ordered him committed to the county jail for ten days.

The court further ordered the sheriff to eject the petitioner from the office in question, to take possession of the office, to put Mr. Nash into possession thereof, and to make immediate return to that order.

It is against the warrant issued on this order that petitioner complains. He seeks to be set at liberty from the imprisonment to which the order condemns him.

The material parts of the section relied on by petitioner, on this branch of the controversy, are as follows:

"Sec. 1966. *Clerk to give bond—conditions of bond.*—Every clerk, before he enters on the duties of his office, shall enter into bond, payable to the state of Missouri, with good and sufficient securities, who shall be residents of the county for which the clerk is appointed or elected, in any sum not less than $5,000, the amount to be fixed and the bond to be approved by the court of which he is clerk, or by a majority of the judges of such court, in vacation. The bond shall be conditioned that he will faithfully perform the duties of his office, and pay over all moneys which may come to his hand by virtue of his office, and that he, his executors, or administrators, will deliver to his successor, safe and undefaced, all books, records, papers, seals, apparatus, and furniture belonging to his office."

It appears from the record before us, and the fact is not denied, that Mr. Nash had not given the approved bond required by this section preliminary to his entering the office.

The county court had refused to accept or approve his proffered bond. Why it refused does not appear. It may have considered, as do we, that the pending appeal precludes a change of officers "until the contest shall be decided;" that is to say, "decided" by the

court having final authority to decide it, and whose jurisdiction has attached to the cause by virtue of the appeal, with bond.

It may have considered the sureties insufficient.

Whatever the grounds for the county court's refusal, its action can not correctly be held to amount to an approval of the bond, or to justify Mr. Nash in taking possession of the office without a bond, in the teeth of the statute above quoted. Sec. 1966.

In the absence of proof to the contrary, we should presume that the action of the county court was induced by a sound discretion. It will not do to assume, as our learned brother GANTT appears to intimate, that the county court acted "without reason or law," and "arbitrarily refused to pass upon the bond." If such was the fact, the remedy would not be found in pushing Mr. Nash into the office without any bond to secure to the public the faithful performance of his duties.

Legal steps might be taken to compel a proper approval of the bond, but that approval could not be dispensed with merely to hasten a change of incumbents of the office.

It appears to us that until Mr. Nash has given bond, approved as required by law, he is not in position to demand of Mr. Craig immediate possession of the office. In that state of the case, Mr. Craig could not properly be held guilty of contempt in not giving the office and its public documents to Mr. Nash. On the contrary, Mr. Craig, in such circumstances, was entitled to remain in the office by virtue of his commission, until, at least, Mr. Nash, the contestant, had fully qualified according to law to enter on his duties. Under the constitution and the law, until Mr. Nash qualified, Mr. Craig was rightfully in the office. Const. 1875, art. 14, sec. 5.

St. Louis v. Weitzel.

We are, therefore, of opinion, that the petitioner is not guilty of any contempt, and should be discharged from imprisonment. BRACE, C. J., and ROBINSON, J., join in this dissent.